IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

EUGENE M. JOHNSON
6409 Emerson Avenue
Huntington, WV  25705                    Civil Action Number:  3:17-cv-03656

    -vs-

WEST VIRGINIA DIVISION                   Judge: _____
OF REHABILITATIVE SERVICES
107 Capitol Street
Charleston, WV  25301-2609

    and

WEST VIRGINIA DEPARTMENT
OF EDUCATION AND THE ARTS,
1900 Kanawha Boulevard, East
Building 5, Room 205
Charleston, WV 25305

    and

DONNA ASHWORTH
107 Capitol Street
Charleston, WV  25301-2609

    and

GENTRY CLINE,
107 Capitol Street
Charleston, WV  25301-2609

    and

TERESA SWECKER
Huntington District & Branch Office
2699 Park Ave., Suite 200
Huntington, WV 25704

and

TERESA HAER
Huntington District & Branch Office
2699 Park Ave., Suite 200
Huntington, WV 25704

## COMPLAINT

COMES NOW the Plaintiff, Eugene M. Johnson, by and through the undersigned counsel, and for his *Complaint*, states as follows.

1. The Plaintiff is a resident and citizen of Huntington, Cabell County, West Virginia.

2. Defendant West Virginia Division of Rehabilitative Services (hereinafter "DRS") is a political subdivision of the State of West Virginia.

3. Defendant West Virginia Department of Education and the Arts (hereinafter "DOE") is a political subdivision of the State of West Virginia.

4. The DRS is a subdivision of the DOE, which therefore has responsibility for the acts and omissions of the DRS and its employees.

5. Defendant Donna Ashworth is and was at all times relevant to this *Complaint* an employee of DRS, held the office of Director of the DRS, and, upon information and belief, a resident of Kanawha County, WV.

6. Defendant Gentry Cline is and was at all times relevant to this *Complaint* an employee of DRS, held supervisory authority over Defendants Swecker and Haer, and, upon information and belief, a resident of Kanawha County, WV.

7. Defendant Teresa Swecker is and was at all times relevant to this *Complaint* an employee of DRS, held the position of Huntington Office Supervisor, and, upon information and belief, a resident of Cabell County, WV.

8. Defendant Teresa Haer is and was at all times relevant to this *Complaint* an employee of DRS, held the position of District Manager of the Huntington District, and, upon information and belief, a resident of Cabell County, WV.

9. On or about August 16, 2013 Mr. Johnson was hired as a Rehabilitation Counselor by the Defendant and assigned to work in Defendant's Huntington District Office.

10. Mr. Johnson holds a Bachelor's Degree in Counseling (2004) and a Master's Degree in Mental Health Counseling (2008), both from Marshall University in Huntington, West Virginia.

11. Prior to his hiring by the DRS, Mr. Johnson had approximately ten (10) years work experiences as a counselor.

12. Thus Mr. Johnson is a "qualified individual" as defined by 42 U.S. Code § 12111(8) with regard to the duties of his employment by the Defendant.

13. Prior to his hiring by the DRS, Mr. Johnson had been diagnosed with attention deficit hyperactivity disorder ("ADHD"), dyslexia, migraine headaches, and depression.

14. Prior to his hiring by the DRS, Mr. Johnson was a client of the DRS receiving services related to the above-listed disabilities in the DRS's Huntington District Office.

15. Defendants Ashworth, Cline, Swecker and Haer all had supervisory authority over the Plaintiff during the term of his employment by the DRS.

16. Through Mr. Johnson's client status, the DRS had notice of Mr. Johnson's disability status prior to hiring him.

17. Defendant is an "employer" as defined by 42 U.S. Code § 12111(5), and thus a "covered entity" as defined in 42 U.S. Code § 12111(2).

18. 42 U.S. Code § 12111(9) states:

> The term "reasonable accommodation" may include –
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

19. 42 US. Code § 12111(a), part of the Rehabilitation Act of 1973 provides:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

      advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

20. 29 U.S. Code § 794a(a)(2) provides:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

- 

21. 42 U.S. Code § 2000d-7(a) provides:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C. 794], title IX of the Education Amendments of 1972 [20 U.S.C. 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C. 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

- 

22. The DRS receives funds from the Rehabilitation Services Administration, Office of Special Education and Rehabilitation Services, U.S. Department of Education, which is an arm of the federal government, which funds are used to finance the job duties performed by the Plaintiff during his employment with DRS.

23. The DOE also receives funds from the U.S. Department of Education, , which is an arm of the federal government, which funds are, upon information and belief, used to finance rehabilitation services to the disabled.

24. On or about August 24, 2015, the Equal Employment Opportunity Commission issued Mr. Johnson a "Right to Sue" letter in connection to EEOC Charge No. 533-2015-00593 for disability discrimination against the DRS.

25. On or about April 20, 2017, the Equal Employment Opportunity Commission issued Mr. Johnson a second "Right to Sue" letter in connection to EEOC Charge No. 533-2016-00630 for disability discrimination against the DRS.

## COUNT I

26. The Plaintiff incorporates all prior paragraphs of the *Complaint* as if fully set forth herein.

27. Approximately one (1) week after hiring Mr. Johnson, the DRS terminated certain services for Mr. Johnson as a DRS client including, but not limited to, funding and supportive services related to Mr. Johnson's obtaining licensure as a Licensed Practicing Counselor.

28. Upon information and belief, the termination of Mr. Johnson's services as a DRS client was a result of actions of one or more of Defendants Ashworth, Cline, Swecker, and Haer.

29. The termination of Mr. Johnson's services as a DRS client impacted Mr. Johnson's chances of advancement on the basis of his disabilities in violation of 42 US. Code § 12111(a).

## COUNT II

30. The Plaintiff incorporates all prior paragraphs of the *Complaint* as if fully set forth herein.

31. Each Rehabilitation Counselor for the DRS is assigned a Rehabilitative Services Assistant (hereinafter "RSA") who deals directly with clients and applications in connection to the Rehabilitation Counselor's work.

32. Approximately February, 2014 the DRS, by and through Defendants Swecker and Haer, transferred Mr. Johnson's RSA to another physical location thus placing him, despite his known disabilities, at a disadvantage in his performance of his job duties, while not so-transferring the RSAs of other Rehabilitation Counselors who did not suffer disabilities.

33. The relocation of Mr. Johnson's RSA subjected him to disadvantage in the performance of his job duties on the basis of his disabilities in violation of 42 US. Code § 12111(a).

## COUNT III

34. The Plaintiff incorporates all prior paragraphs of the *Complaint* as if fully set forth herein.

35. Approximately June, 2014, Mr. Johnson was instructed by Defendants Swecker and Cline to undertake all interactions with his RSA via email, despite the difficulties with this directive caused by his dyslexia.

36. No written policy was ever produced explaining the basis for this directive.

37. Other Rehabilitation Counselors, who did not suffer disabilities, were not subject to this directive.

38. The directive requiring Mr. Johnson to undertake interactions with his RSA through email placed him at a disadvantage in the performance of his job duties on the basis of his disabilities in violation of 42 US. Code § 12111(a).

## COUNT IV

39. The Plaintiff incorporates all prior paragraphs of the *Complaint* as if fully set forth herein.

40. Approximately November, 2014, due to stress brought on by the retaliation on the part of his superiors at the DRS in connection to complaints and grievances Mr. Johnson had pursued regarding the above-mentioned disability discrimination, Mr. Johnson's physician diagnosed him with panic attacks and neurological migraine headaches, and and recommended he transfer to another DRS facility.

41. On that basis, Mr. Johnson requested a transfer to another DRS facility, a request which was denied by Defendants Cline, Ashworth, and Haer.

42. Over the months to come, Mr. Johnson repeatedly pursued a transfer to another DRS facility and was repeatedly denied such a transfer byDefendants Cline, Ashworth, and Haer.

43. In response to Mr. Johnson's transfer requests, his supervisors and management of the

DRS repeatedly stated that transfers to other facilities were against DRS policy despite the fact that numerous employees who did not suffer disabilities were allowed transfers.

44. The Defendant's refusal of Mr. Johnson's request for transfer when other employees without disabilities were transferred amounted to discrimination "against a qualified individual on the basis of disability in regard to . . . other terms, conditions, and privileges of employment."

45. Further, a transfer to another DRS facility would be a reasonable accommodation of Mr. Johnson's disabilities as contemplated by 42 U.S. Code § 12111(8).

46. 42 U.S. Code § 12112(b) states, in relevant part:

> the term "discriminate against a qualified individual on the basis of disability" includes –
>
> . . .
>
> (5) (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee

47. Thus the failure to provide the Plaintiff with a transfer was a violation of 42 US. Code § 12111(a).

## COUNT V

48. The Plaintiff incorporates all prior paragraphs of the *Complaint* as if fully set forth herein.

49. Approximately July 2015, Mr. Johnson was terminated from employment by the DRS.

50. The alleged issues leading to Mr. Johnson's termination were entirely connected to his disabilities.

51. By terminating Mr. Johnson rather than providing the reasonable accommodation of a transfer to another DRS facility, the Defendant discriminated "against a qualified individual on the basis of disability in regard to . . . discharge of employees[.]"

52. Thus the Plaintiff's termination was a violation of 42 US. Code § 12111(a).

**COUNT VI**

53. The Plaintiff incorporates all prior paragraphs of the *Complaint* as if fully set forth herein.

54. The acts and omissions by the DRS as described in this Complaint are also violative of the Rehabilitation Act of 1973.

WHEREFORE, for the foregoing reasons, the Plaintiff demands judgment against the Defendants for violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act in an amount sufficient to compensate the Plaintiff for his damages and to deter the Defendants from further such acts of disability discrimination, attorney's fees and costs, that all money damages against political subdivisions of the State of West Virginia be limited to the amount of applicable insurance coverage, injunctive relief requiring the reinstatement of client benefits to the Plaintiff with the DRS, injunctive relief requiring the reinstatement of the Plaintiff's employment with the DRS with the accommodations previously sought by the Plaintiff as well as any further reasonable accommodations required by the plaintiff, injunctive relief prohibiting the Defendants from discriminating against the Plaintiff or other disabled individuals on the basis of their disabilities, and for such other relief as the Court adjudges to be just and reasonable.

A JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.

Respectfully Presented,

 /s/ B. Luke Styer__
B. Luke Styer (WV Bar No. 9118)
1001 Sixth Avenue
Suite 6
Huntington, WV 25701
Telephone:   (304) 523-2200
Email: lukestyer@lukestyerlaw.com
*Counsel for Plaintiff*